**DORR–OLIVER INCORPORATED, Plaintiff,**

v.

**FLUID QUIP, INC., Andrew Franko and Pictek, Inc., Defendants.**

No. 93 C 842.

United States District Court, N.D. Illinois.

June 5, 1997.

P. Luther, Andrew L. Tiajoloff, Alfred H. Hemingway, Jr., Edward P. Kelly, John E. Lynch, Felfe & Lynch, New York City, for Dorr–Oliver Inc.

Thomas W. Flynn, Thomas & Buckley, Chicago, IL, Bruce E. Peacock, Thomas W. Flynn, Matthew R. Jenkins, Biebel & French, Dayton, OH, Patricia Susan Smart, Chicago, IL, John Bostjancich, Smart & Bostjancich, Chicago, IL, for Fluid Quip Inc.

Bruce E. Peacock, Thomas W. Flynn, Matthew R. Jenkins, Biebel & French, Dayton, OH, Patricia Susan Smart, Chicago, IL, John Bostjancich, Smart & Bostjancich, Chicago, IL, for Andrew Franko.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Defendants seek attorneys' fees as the prevailing parties in this trademark/unfair competition litigation pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a) (" § 35(a)"), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a(c) (the "CFA"). The court should exercise its discretion to award such fees, defendants argue, because this is an "exceptional case" that was filed and prosecuted by plaintiff for improper purposes and without any foundation in the law or the facts. Plaintiff, which has seen its case whittled down first by this court and then by the court of appeals, protests that it was justified in bringing and pursuing in good faith its claims of trademark and trade dress infringement and violations of the CFA, thus removing the case from the ambit of "exceptional."

Having reviewed the record, the briefs of the parties and the decisions of this court and the Seventh Circuit, the court concludes that an award of attorneys is not warranted in this case. Although plaintiff ultimately lost all that it was attempting to achieve in the litigation, it did so in the pursuit of a legitimate goal (protection of intellectual property interests) and in good faith. It would be impossible to distinguish this case from many other unsuccessful lawsuits brought by parties who believed they had protectable trademarks and trade dress, only

William Terry Rifkin, Mary Spaulding Burns, Rudnick & Wolfe, Chicago, IL, John

to find that the courts disagreed. To award fees to defendants in this action would be to convert 35(a) and the CFA into the English rule that routinely awards fees in most cases to successful litigants. This the court refuses to do.

### FACTS

The facts and history of this litigation are amply set forth in the opinions of this court, reported at 894 F.Supp. 1190, and the court of appeals, reported at 94 F.3d 376, and will not be repeated here. The only thing the court would add to those opinions is that, based on many months of pretrial proceedings and many days of trial, the court saw no evidence of unprofessional conduct by the parties or counsel on either side. Simply put, this court was in a unique position to observe whether plaintiff's litigation tactics both before and during the trial were predatory or designed to overwhelm defendants with a case that plaintiff knew was without merit. The court can draw no such conclusion from the record and the proceedings conducted in this case.

With this in mind, the court will briefly address defendants' arguments.

### LANHAM ACT

■ Section 35(a) provides various remedies for a successful plaintiff who proves violations of any right in its registered mark or a violation of Section 1125(a) of the Lanham Act. The last sentence of that statute provides: "The court in exceptional cases may award reasonable attorneys' fees to the prevailing party." Thus, even if the case is "exceptional," the decision to grant attorneys' fees remains within the discretion of the trial court. *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166 (11th Cir.1994).

■ Defendants rely on the legislative history of § 35(a) and several decisions of other circuits in arguing that it need not demonstrate plaintiff's bad faith to warrant an award of attorneys' fees.[1] "Exceptional," in the context of this statute, means "uncommon, not run of the mill." *Noxell Corp. v.*

*Firehouse No. 1 Bar–B–Que Restaurant,* 771 F.2d 521, 526 (D.C.Cir.1985). Defendants cite *Scotch Whisky Association v. Majestic Distilling Co.,* 958 F.2d 594, 600 (4th Cir. 1992), in which the court noted that the Senate Report "speaks of acts characterized as 'malicious, fraudulent, deliberate and wilful.' Notably absent in the discussion relating to fee awards to prevailing defendants is language suggesting a requirement of bad faith." The *Noxell* court also quoted from the Senate Report, noting that "Congress endeavored to afford protections 'against unfounded suits brought by trademark owners for harassment and the like,'" 771 F.2d at 524. *See also, NuPulse, Inc. v. Schlueter Co.,* 853 F.2d 545, 547 (7th Cir.1988) ("[a]n 'exceptional case' is one in which the acts of infringement can be characterized as 'malicious, fraudulent, deliberate, or wilful'").

■ Defendant bases its contention that this is an exceptional case that warrants the exercise of the court's discretion to grant attorneys' fees primarily on three factors: (1) plaintiff's claims for actual damages and of trademark rights in the term "clamshell" were rejected by this court; (2) plaintiff's claim of infringement of a protectable right in its trade dress for the clamshell configuration of its starch washer was rejected by the court of appeals, which found that there was no plausible theory for claiming likelihood of confusion; (3) plaintiff, a large, multi-million dollar corporation, was abusing its "monopoly" position in the industry in pursuing this litigation against defendant, a small, "start-up" competitor that was attracted to enter the field by plaintiff's own customers.

With respect to the first point, plaintiff was unable to seek damages for lost profits as a result of the parties' stipulation, based on this court's interlocutory ruling, that there was no actual confusion at the point of sale as to the source of defendants' clamshell. *See,* 894 F.Supp. at 1195, 1198–1199. Thus, this issue dropped from the case at a relatively early, pretrial stage, leaving the more important issue of likelihood of confusion to be addressed by the parties and the court at

---

1. Although defendant does contend that plaintiff was in bad faith, its point is that the court need not reach this conclusion to award fees. 894 F.Supp. at 1204–1205.

trial. Regarding plaintiff's unsuccessful claim that it had a common law trademark right in the name "clamshell" as it applies to plaintiff's Type C starch washer, this court held that no such right existed for the reasons discussed at 894 F.Supp. at 1196–1197. Although the court rejected plaintiff's claims (a ruling that was not appealed), the court does not regard this part of the case to be "exceptional" as that term is used in § 35(a).

With respect to the second point, this court found both that plaintiff had a protectable trade dress interest in the configuration of its clamshell starch washer, and that that interest had been infringed by defendants. The court of appeals disagreed with this court's conclusion regarding infringement, although it did not disturb the finding that plaintiff had a protectable interest in the design. Regardless of the reviewing court's ultimate decision, the fact that this court, as an objective tribunal, found for plaintiff on the basis of the evidence presented at the trial makes it impossible to conclude that plaintiff was "malicious, fraudulent, deliberate or wilful" in bringing its claim for trade dress infringement. *NuPulse*, 853 F.2d at 547.

With respect to the third point, while it is true that plaintiff economically dwarfs defendants and no doubt sought to protect its market position (whether labeled "monopoly" or otherwise), such motives are common in intellectual property disputes and cannot form the basis of concluding that a case is "exceptional." The reporters are filled with cases (some of which are unsuccessful) filed by companies that are dominant in their industries to protect their patent, trademark and copyright interests.[2] The court might reach a different conclusion if, during the course of administration and trial of the case, it had reason to conclude that plaintiff was acting in a predatory, unreasonable manner to harass defendants or take advantage of their lesser economic ability to litigate an obviously meritless case. This court observed no such conduct on the part of plaintiff or its counsel, and concludes that plaintiff did not intentionally bring a case that it knew was unlikely to succeed. To the contrary, this court is convinced that plaintiff sincerely believed in its cause and sought in good faith to protect intellectual property interests it regarded (incorrectly, as it turned out) as belonging exclusively to it. Accordingly, the court holds that this case is not an exceptional one which would justify the imposition of attorneys' fees in favor of the successful defendants.[3]

Finally, even were the court to conclude that this case was somehow "exceptional," it would exercise its discretion to refuse an award of fees to defendants. In addition to the reasons discussed above, the court notes that in the more than four years since this case was filed both parties expended significant resources, time and money on behalf of their positions. The first trial before Judge Conlon ended in a mistrial, with the court assessing jury costs personally against the attorneys for plaintiff and defendants pursuant to 28 U.S.C. § 1927. Although plaintiff may have more resources than defendants, both sides were equally litigious and, in Judge Conlon's view, equally at fault for causing the mistrial. Cross motions for summary judgment were denied, and numerous discovery and other pretrial disputes were won and lost by each side.

It appears from this court's review of the record during the period the case was before Judge Conlon and its observations of the parties' conduct thereafter that there were many hotly contested issues of great concern to each side. Plaintiff's belief that it had trademark rights to the term "clamshell," while unfounded, was understandable given the history of the invention and industry acceptance of this starch washer that was developed and marketed exclusively by plaintiff for many years. Likewise, plaintiff was justified in its belief that it had a protectable interest in the shape of the outer housing of the clamshell (an issue with which this court found in favor of plaintiff and which was not

---

**2.** See, e.g., *Deere & Co. v. Farmhand, Inc.,* 560 F.Supp. 85 (S.D.Ia.1982), aff'd. 721 F.2d 253 (8th Cir.1983). *Pfizer Inc. v. Astra Pharm. Products, Inc.,* 858 F.Supp. 1305 (S.D.N.Y.1994).

**3.** It should be noted that the court reached the same conclusion, at defendants' urging, when it denied attorneys' fees to plaintiff after the trial. 894 F.Supp. 1190.

disturbed on appeal). Finally, plaintiff's claim that its trade dress was infringed, although ultimately denied by the court of appeals, was colorable enough to convince this court of its merit.

██ It is time this litigation came to a close. Under our system of civil justice each side must bear its own attorneys' fees absent a statute or contract provision to the contrary. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). Section 35(a) allows a possible exception to the "American Rule" if the court in the exercise of its discretion agrees to award fees. Just as this court deemed it inappropriate—when deciding to enter judgment for plaintiff on its trade dress claim—to award attorneys' fees to plaintiff, it deems inappropriate any such award to defendants now that they have succeeded in their defense. In this court's judgment there would be no purpose served other than to penalize by hindsight a party that pursued its position aggressively but in good faith.

### ILLINOIS CONSUMER FRAUD ACT

Section 10(a) of the CFA, like § 35(a) of the Lanham Act, allows the court, in its sole discretion, to award reasonable attorneys' fees to the prevailing party—plaintiff or defendant. Although there is some disagreement on whether the Illinois courts would award fees absent a showing of bad faith by the losing party,[4] this court's reasoning with respect to § 35(a) leads to the same result with respect to the CFA.

### CONCLUSION

For the foregoing reasons, defendants' motion for an award of attorneys' fees under § 35(a) of the Lanham Act and § 10(a) of the Illinois Consumer Fraud Act is denied.

**4.** Compare *Haskell v. Blumthal,* 204 Ill.App.3d 596, 149 Ill.Dec. 619, 561 N.E.2d 1315 (4th Dist.1990), with *Graunke v. Elmhurst Chrysler*

*Plymouth Volvo, Inc.,* 247 Ill.App.3d 1015, 187 Ill.Dec. 401, 617 N.E.2d 858 (2nd Dist.1993).